■ In the Matter of Robert Wexler et al., Appellants, v New York State Tax Commission, Respondent.—Mercure, J. Appeal from a judgment of the Supreme Court (Bradley, J.), entered October 26, 1987 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent denying petitioners' request for tax amnesty.

Petitioners each submitted an application under the New York State Tax Amnesty Program (L 1985, ch 66, as amended by L 1985, chs 765, 766) for personal amnesty in connection with any possible liability they might each have, as officers or stockholders of Tourneau, Inc., for the payment of sales tax for the 12 quarters beginning on June 1, 1980 and ending on May 31, 1983. In each case the application was denied due to an ongoing criminal investigation relating to the subject taxes. Petitioners protested the denials. By letters from the Amnesty Project Counsel, petitioners were informed that they were ineligible for tax amnesty on 2 grounds: (1) Tourneau had been placed on the ineligibility list and petitioners were its corporate officers, and (2) each of the corporate officers individually had been placed on the same ineligibility list.

Petitioners then filed petitions with respondent claiming that the denials were erroneous and arbitrary. Respondent determined that the denials were proper due to petitioners' inclusion on the ineligibility list in their individual capacity and also as corporate officers of Tourneau. Petitioners sought review in Supreme Court, which dismissed their petition pursuant to CPLR article 78, and this appeal ensued.

We affirm. Petitioners' initial contention, that respondent erroneously based its denial of petitioners' request for amnesty on the ground that they were officers of a corporation under investigation, lacks merit. In enacting the Amnesty Program, the Legislature provided: "Amnesty shall not be granted to any taxpayer who is a *party to any criminal investigation* being conducted by an agency of the state * * * or to any civil or criminal litigation which is pending on the date of the taxpayer's application" (L 1985, ch 66, § 1 [c] [emphasis supplied]). The Legislature did not specifically define the term "party to any criminal investigation" or set forth the executive details of the Amnesty Program; rather, it provided that respondent "shall formulate such regulations as are necessary * * * and take any and all other actions necessary to implement the provisions of this act" (L 1985, ch 66, § 1 [f]; *see, Matter of Consolidated Edison Co. v Department of Envtl. Conservation,* 71 NY2d 186, 191). The regulations formulated pursuant to that legislative authority provide, *inter alia,* that the Department of Taxation and Finance "shall prepare a confidential list of those taxpayers who are ineligible because they are *under active criminal investigation* relating directly to any covered taxes" (20 NYCRR 2500.4 [b] [1] [emphasis supplied]) and that "[e]very application for amnesty shall be compared with the list and any application for a designated tax subject to an active criminal investigation shall be denied" (20 NYCRR 2500.4 [b] [2]).

There is no question that Tourneau and its officers, petitioners herein, were under criminal investigation with respect to tax due on Tourneau's sales at the time of petitioners' applications for amnesty. In fact, on July 8, 1985 the Attorney-General's office caused a subpoena duces tecum to be served upon Tourneau, calling for the production of its business records, including the names and Social Security numbers of its officers. There is also no question that the Attorney-General timely forwarded to respondent the names and identification numbers of Tourneau and of each of the petitioners as taxpayers under active investigation, in connection with Tourneau's sales tax liability for the subject quarters, for inclusion on the list prepared in accordance with 20 NYCRR 2500.4 (b) (1).

Petitioners contend, however, that it was Tourneau, and not them, that was the subject of the Attorney-General's investigation and that, accordingly, they should not have been included on respondent's list or denied amnesty. This contention fails to consider that a corporate officer or employee can,

under appropriate circumstances, be individually liable for the corporation's sales taxes. The definition of "persons required to collect tax" contained in Tax Law § 1131 (1) includes "any officer, director or employee of a corporation * * * who as such officer, director or employee is under a duty to act for such corporation". Under Tax Law § 1133 (a), "every person required to collect any tax imposed by [article 28] shall be personally liable for the tax imposed, collected or required to be collected" *(see, Matter of Cohen v State Tax Commn.,* 128 AD2d 1022). In fact, in obvious recognition of an officer's potential liability for a corporation's sales taxes, 20 NYCRR 2500.6 (b) (2) provides that "[i]n the case of a grant of amnesty to an applicant for sales or franchise tax liability, amnesty also bars any criminal prosecution for the designated tax against a responsible person, including an officer or employee" *(see,* Penal Law § 20.25).

The very fact that petitioners applied for amnesty as officers and shareholders of the corporation attests to their concern about potential criminal liability arising out of Tourneau's sales tax history. We are unpersuaded by petitioners' contention that there must be a factual determination that the corporate officers are "responsible". The issue is whether the taxpayer's potential criminal liability has been detected, not whether he or she will ultimately be held criminally responsible. Respondent's determination that petitioners are parties to a criminal investigation and, therefore, not eligible for amnesty is reasonable *(see, Matter of Great Lakes-Dunbar-Rochester v State Tax Commn.,* 65 NY2d 339, 343).

We find similarly unavailing petitioners' argument that, in supplying their names and identification numbers to respondent, the Attorney-General disclosed Grand Jury evidence in violation of CPL 190.25. Clearly, pursuant to CPL 190.25 (4) and 20 NYCRR 2500.4 (b) (1), the Attorney-General's office acted within the "lawful discharge of [its] duties" by cooperating with the Amnesty Program and submitting a list of taxpayers under active criminal investigation. Further, a review of the material submitted for the court's in camera review discloses that the Attorney-General possessed independent knowledge of petitioners' identity and status as responsible officers prior to receipt of the subpoenaed information.

We have considered petitioner's remaining contentions and find them to be unpersuasive.

Judgment affirmed, without costs. Mahoney, P. J., Mikoll, Yesawich, Jr., Harvey and Mercure, JJ., concur.