■ PAUL GRIFFIN et al., Appellants, v RICHARD I. ANSLOW, Respondent. [793 NYS2d 615]—

Mercure, J. Appeal from an order of the Supreme Court (Clemente, J.), entered October 3, 2003 in Sullivan County, which granted defendant's motion to dismiss the complaint.

As alleged in the complaint, plaintiffs owned and operated the Griffin House Bed & Breakfast when they met Cheryl Reid and Alfred Zecchine in 1998. Plaintiffs, Reid and Zecchine decided to enter a business venture involving the acquisition and operation of bed and breakfast establishments. Reid and Zecchine— clients of defendant, an attorney—recommended defendant to provide legal services in furtherance of the business venture. A retainer agreement, dated March 4, 1999 and signed by defendant and plaintiff Paul Griffin (hereinafter plaintiff) on behalf of Griffin House Bed & Breakfast, defines the engagement as follows: "to act as counsel with respect to securities work regarding the review of a Regulation D Private Placement Memorandum which is to be prepared by a third party and to file all necessary blue sky documents (and related work) for Griffin House Bed & Breakfast. (the 'Company'). You have authorized us to perform all acts on behalf of the Company which are necessary and appropriate to this representation." A certificate of incorporation for Griff-Inns, Inc. was filed by defendant some 10 days later. Plaintiffs and Reid were the officers and shareholders of Griff-Inns, with plaintiffs holding an aggregate majority share of the corporation's stock. Shortly thereafter, Barbara Friedland became a shareholder, and the distribution of stock was realigned such that Reid and Friedland owned an aggregate majority share of Griff-Inns. Plaintiff was designated chief executive officer (hereinafter CEO) of the corporation, Reid was president, Friedland was vice-president, and plaintiff Irene Griffin was secretary-treasurer. Two additional related corporate entities were formed on behalf of the venture by defendant, as well.

In the spring of 1999, Griff-Inns gave a promissory note to Northport Holdings, Inc., a company in which Zecchine held an interest, in exchange for $300,000 needed for the purchase of an inn property. Plaintiff executed a personal guarantee of the note. Thereafter, the relationship between plaintiffs and Reid deteriorated drastically and rapidly, and by October 1999, defen-

dant was engaged in efforts to mediate and resolve the disputes that had arisen between plaintiffs on one side and Northport, its officers and directors and Reid and Friedland on the other. A tentative settlement agreement was never finalized, and in a letter dated October 29, 1999, defendant, as counsel for Griff-Inns, informed plaintiffs that they had been removed as directors of the corporation and that plaintiff had been removed as CEO. Litigation over the business venture ensued, and was ultimately settled.

The first cause of action in the complaint is expressly based upon attorney malpractice. While the second through seventh causes of action set forth various acts of misconduct allegedly committed by defendant, they do not expressly articulate plaintiffs' legal theory in support of those causes of action. However, they all arise from the personal attorney-client relationship that is alleged to have existed between plaintiffs and defendant, and thus sound in attorney malpractice or breach of fiduciary duty. Defendant moved to dismiss the complaint on the grounds of, among others, failure to state a cause of action based upon documentary evidence (*see* CPLR 3211 [a] [1], [7]). Supreme Court granted the motion, plaintiffs appeal, and we now affirm.

Plaintiffs' primary arguments on appeal are that Supreme Court applied an incorrect standard of review to the motion to dismiss and improperly decided disputed issues of fact. It is well established that " '[o]n a motion to dismiss pursuant to CPLR 3211, the pleading is to be afforded a liberal construction. We accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory. . . . [D]ismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law' " (*Arnav Indus. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner*, 96 NY2d 300, 303 [2001], quoting *Leon v Martinez*, 84 NY2d 83, 87-88 [1994] [citations omitted]; *see Morgenthow & Latham v Bank of N.Y. Co.*, 305 AD2d 74, 78 [2003], *lv denied* 100 NY2d 512 [2003]; *Unadilla Silo Co. v Ernst & Young*, 234 AD2d 754 [1996]). "However, '[i]n those circumstances where the [plaintiffs'] legal conclusions and factual allegations are flatly contradicted by documentary evidence, they are not presumed to be true or accorded every favorable inference, and the criterion becomes "whether the proponent of the pleading has a cause of action, not whether he has stated one" ' " (*Morgenthow & Latham v Bank of N.Y. Co., supra* at 78, quot-

ing *Ark Bryant Park Corp. v Bryant Park Restoration Corp.*, 285 AD2d 143, 150 [2001], quoting *Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977] [citations omitted]; *see also Biondi v Beekman Hill House Apt. Corp.*, 257 AD2d 76, 81 [1999], *affd on other grounds* 94 NY2d 659 [2000]).

The facts critical to the success of defendant's motion are those directed to the existence of an attorney-client relationship between defendant and plaintiffs as individuals. Defendant's motion to dismiss is predicated upon the absence of such a relationship, because an attorney will not be liable to a nonclient for acts of malpractice absent fraud, collusion, or a malicious or tortious act (*see C.K. Indus. Corp. v C.M. Indus. Corp.*, 213 AD2d 846, 847 [1995]; *see also Conti v Polizzotto*, 243 AD2d 672 [1997]; *Doo v Berger*, 227 AD2d 435, 436 [1996]; *cf. Koncelik v Abady*, 179 AD2d 942, 944 [1992]). In support of the motion to dismiss based upon documentary evidence, defendant relied upon the retainer agreement involving Griffin House Bed & Breakfast, as well as additional documents establishing that all of defendant's work relating to plaintiffs was directed to the business venture and its corporate entities. We agree with defendant that the retainer agreement establishes that the attorney-client relationship formed pursuant to that agreement was not between defendant and plaintiffs. It speaks only of legal work to be performed for "the Company," was addressed to and accepted by plaintiff on behalf of Griffin House Bed & Breakfast, and an initial fee "to set up our corporation" was paid with a check signed by plaintiff on an account of "Irene Griffin DBA The Griffin House." The existence of an attorney-client relationship between defendant and the business venture is borne out by additional documentary evidence submitted by defendant, and none of the documentary evidence suggests privity between defendant and plaintiffs individually. Moreover, the complaint itself alleges that plaintiffs as individuals were represented by other counsel with respect to the dispute that had arisen between plaintiffs and Reid, and documentary evidence establishes that plaintiffs were represented by personal counsel with respect to the purchase of real property and the related promissory note. Furthermore, plaintiffs concede that defendant was corporate counsel to Griff-Inns; they contend, however, that defendant was simultaneously acting as counsel to them as individuals.

Plaintiffs' conclusory assertion that they considered defendant to be their personal attorney does not defeat the documentary evidence's conclusive showing of the absence of privity between defendant and plaintiffs, as "plaintiffs' unilateral beliefs

alone do not confer upon them the status of defendant's clients" (*McLenithan v McLenithan*, 273 AD2d 757, 759 [2000]; *see Jane St. Co. v Rosenberg & Estis*, 192 AD2d 451 [1993], *lv denied* 82 NY2d 654 [1993]). Plaintiffs' claims that defendant, as counsel for Griff-Inns, failed to require the directors to comply with proper corporate procedures in effecting plaintiffs' ouster from the corporation do not establish privity, because corporate counsel is not in privity with the directors or shareholders of the corporation (*see Kushner v Herman*, 215 AD2d 633, 634 [1995]; *Deni v Air Niagara*, 190 AD2d 1011 [1993]). Nor is the requirement of privity excused in this case by the factually unsupported assertions of collusion in the complaint. In the absence of privity between plaintiffs and defendant, the complaint fails to state a cause of action and defendant's motion was properly granted.

We have considered plaintiffs' remaining arguments and find them to be without merit.

Cardona, P.J., Peters, Spain and Carpinello, JJ., concur. Ordered that the order is affirmed, with costs.