■ In the Matter of MICHAEL CONNERS II et al., Appellants, v TOWN OF COLONIE et al., Respondents. [968 NYS2d 717]—

Garry, J. Appeal from a judgment of the Supreme Court (McDonough, J.), entered April 11, 2012 in Albany County, which, in a proceeding pursuant to CPLR article 78, among other things, granted respondents' motions to dismiss the amended petition.

Respondent Town of Colonie owns land in the City of Cohoes, Albany County on which a landfill and other solid waste management facilities (hereinafter collectively referred to as the landfill) are operated. In 2010, the Town decided to transfer operational control of the landfill to a private company and solicited proposals pursuant to General Municipal Law § 120-w (4) (e). A proposal was submitted by respondent Capital Region Landfills, Inc. (hereinafter CRL), a wholly-owned subsidiary of respondent Waste Connections, Inc. (hereinafter WCI). In July 2011, respondent Town Board of the Town of Colonie adopted a resolution authorizing the Town to enter into an agreement with CRL for the landfill's operation and management. Thereafter, the Town and CRL executed a "Solid Waste Facility Operating Agreement" (hereinafter the agreement) by which, among other things, CRL agreed to manage, maintain and operate the landfill for 25 years. The Town then transferred the landfill's operation to CRL.

Petitioners, all of whom are Town residents, commenced this CPLR article 78 proceeding against the Town, the Board and respondent Paula A. Mahan, the Supervisor of the Town (hereinafter collectively referred to as the Town respondents), seeking, among other things, to annul the resolution for failing to comply with Town Law §§ 64 (2) and 90. Following a motion by the Town respondents to dismiss the petition, petitioners served an amended petition naming CRL and WCI as additional parties. CRL, WCI and the Town respondents each then moved to dismiss the amended petition alleging, among other things, that the proceeding was precluded by General Municipal Law § 120-w (6). Supreme Court granted respondents' motions and dismissed the petition and amended petition, finding, as pertinent here, that the Town respondents were not required to comply with Town Law § 64 (2), as it conflicts with General Municipal Law § 120-w, and that the proceeding was not authorized by General Municipal Law § 120-w (6). Petitioners appeal.

We conclude that Supreme Court properly dismissed the petition and amended petition, but we do so for other reasons (see *Sega v State of New York*, 60 NY2d 183, 190 n 2 [1983]; *Matter of NANCO Envtl. Servs. v Jorling*, 172 AD2d 1, 6 n [1991], *lv*

*denied* 80 NY2d 754 [1992]; *State of New York v Peerless Ins. Co.*, 117 AD2d 370, 373 [1986]). Town Law § 64 (2) provides that, upon adopting a resolution, a town board may "convey or lease real property in the name of the town, which resolution shall be subject to a permissive referendum." The petition and amended petition allege that, as the agreement is "the functional equivalent of a lease," the Town violated Town Law § 64 (2) by adopting the resolution and entering into the agreement without first conducting a permissive referendum (*see Matter of LaBarbera v Town of Woodstock*, 55 AD3d 1093, 1094 [2008]). We disagree, finding that petitioners' documentary evidence establishes conclusively that there was no conveyance subject to Town Law § 64 (2).

Upon a motion to dismiss a CPLR article 78 petition, a court must ordinarily accept the petition's allegations as true (*see* CPLR 7804 [f]; *Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities*, 81 AD3d 145, 148 [2011], *mod* 19 NY3d 106 [2012]; *Matter of Burke v Carey*, 82 AD2d 953, 954 [1981]). However, when a petition's "legal conclusions and factual allegations are flatly contradicted by documentary evidence, they are not presumed to be true or accorded every favorable inference, and the criterion becomes whether the proponent of the pleading has a cause of action, not whether he [or she] has stated one" (*Griffin v Anslow*, 17 AD3d 889, 891-892 [2005] [internal quotation marks and citations omitted]; *accord Matter of North Dock Tin Boat Assn., Inc. v New York State Off. of Gen. Servs.*, 96 AD3d 1186, 1189 [2012]; *see Maas v Cornell Univ.*, 94 NY2d 87, 91 [1999]). Here, petitioners' claims are founded upon their contention that the agreement is a lease. This assertion does not present a factual issue; on the contrary, interpreting the contract to determine whether it is a lease poses questions of law for the court (*see Agristor Leasing v Barlow*, 180 AD2d 899, 901 [1992], *lv dismissed* 80 NY2d 826 [1992]; *see generally Feder v Caliguira*, 8 NY2d 400 [1960]; *Currier, McCabe & Assoc., Inc. v Maher*, 75 AD3d 889 [2010]).

In contending that the agreement is a lease, the petition and amended petition rely primarily upon a detailed comparison between the terms of the agreement and those of a landfill lease from another county, both of which petitioners submitted as exhibits. Respondents concede that the submitted lease was used as a model for some of the agreement's provisions. Petitioners contend that certain resulting similarities between these documents prove that the true character of the agreement is that of a lease, rather than—as respondents contend—an agree-

ment for the operation of a solid waste management facility, as permitted by General Municipal Law § 120-w.* Determining whether the agreement is a lease does not depend upon a comparison with other agreements, nor upon the fact that the parties to the agreement denominated it as an operating agreement rather than as a lease; rather, the true nature of the transaction must be determined by examining the agreement to discern the substantive nature of the obligations it imposes and the rights it confers (*see Feder v Caliguira*, 8 NY2d at 404; *Matter of New York World-Tel. Corp. v McGoldrick*, 298 NY 11, 18 [1948]; *Matter of Great Lakes-Dunbar-Rochester v State Tax Commn.*, 102 AD2d 1, 5 [1984], *revd on other grounds* 65 NY2d 339 [1985]).

"It is the transfer of absolute control and possession of property at an agreed rental which differentiates a lease from other arrangements dealing with property rights" (*Feder v Caliguira*, 8 NY2d at 404; *see Slutzky v Cuomo*, 114 AD2d 116, 118 [1986], *appeal dismissed* 68 NY2d 663 [1986]). Initially, the agreement contains no provisions that explicitly convey property rights, such as the demise of a leasehold or any other estate in land, or a covenant of peaceful enjoyment during the agreement's term. Instead, the agreement's stated purpose is for the Town to "authorize[ ] and direct[ ]" and CRL to "covenant[ ] and agree[ ]" that CRL will "manage, maintain and operate the [landfill] in accordance with the agreements, covenants and conditions set forth herein." Consistent with this purpose, the agreement neither divests the Town of absolute possession and control over the landfill nor grants such rights exclusively to CRL. The Town retains the unlimited right to enter the property "at all reasonable times" to inspect CRL's operations, books, and records. There is no requirement for advance notice, and CRL must facilitate such inspections by informing the Town of the locations where pertinent records are kept. Additionally, the Town may enter the property and operate the landfill in the event of CRL's failure to do so in conformity with the agreement or other default. The Town further retains the right to use the property in connection with a preexisting lease of a gas-to-energy plant and other related contracts with a third party, as well as the obligation to indemnify CRL for any liability arising from this use or otherwise from the Town's "use, possession, operation and management of the [landfill]." Additionally, the Town reserves rights and obligations under a lease agreement with another third party regarding a cellular tower installation, and it retains all oil, natural gas and mineral rights as well as the

---

* This statute does not impose a permissive referendum requirement.

right to enter the landfill property and grant licenses to others to explore and develop these resources in a manner that does not "materially interfere" with CRL's operations.

CRL's operation of the landfill is correspondingly subject to numerous contractual requirements and restrictions. CRL is required to keep the landfill in continuous operation throughout the term of the agreement, and must do so in conformity with applicable laws and regulations, the landfill's existing 6 NYCRR part 360 permit—which remains in the Town's name—and procedures set out in "the Operations and Maintenance Manual for the Town of Colonie." The agreement specifically limits the rates that CRL may charge and the rate adjustments that may be imposed upon Town residents, businesses and others, obligates CRL to honor existing waste disposal contracts and to provide free disposal within specified limits to a number of named entities, and precludes CRL from accepting waste from certain metropolitan areas without the Town's written consent. The agreement further makes CRL responsible for certain financial assurances and other regulatory obligations related to closure and post-closure care of the landfill.

As for financial obligations, the agreement requires CRL to make an initial payment to the Town and additional payments at specified intervals thereafter. Although these payments bear some similarity to rent, the agreement provides that they are made in consideration for CRL's right to retain revenues generated by landfill operations rather than for its possession and use of the property. Further suggesting that these payments are not equivalent to rent, the agreement provides that the payment obligation ends on "the last day on which the [l]andfill accepts [q]ualified [w]aste for disposal" rather than at the end of the agreement's term, and there is no provision for payment of installments to the Town until the end of the agreement's stated term in the event of an early termination caused by CRL's default. Finally, although CRL has "the obligation and the right" to make capital improvements to the landfill, it may do so only after reasonable notice to the Town, must obtain required permits and comply with other requirements set out in the agreement, and may carry out any landfill expansion only upon consultation with the Town.

We agree with petitioners that "the important requirement of permissive referendum" is not to be denigrated (*Atkins v Town of Rotterdam*, 266 AD2d 631, 633 [1999]; *see Matter of Millar v Tolly*, 252 AD2d 872, 873 [1998]). However, Town Law § 64 (2) confines this requirement to conveyances and leases of real property (*see Aiardo v Town of E. Greenbush*, 64 AD3d 849, 852

[2009]). Had the Legislature intended to expand the Town Law requirement to include nonlease landfill operating agreements or to institute a referendum requirement for all solid waste management contracts executed pursuant to General Municipal Law § 120-w, it could have done so. In view of the significant restrictions on CRL's authority and control of the landfill and the rights and powers retained by the Town, the agreement does not convey "absolute control and possession" to CRL and is not a lease as a matter of law (*Feder v Caliguira*, 8 NY2d at 404; *see Matter of New York Pub. Interest Research Group v Town of N. Hempstead*, 153 AD2d 743, 745-746 [1989]; *Slutzky v Cuomo*, 114 AD2d at 118; *Matter of Riverview Apts. Co. v Golos*, 97 AD2d 917, 918 [1983], *lv dismissed* 62 NY2d 606 [1984], *lv dismissed* 62 NY2d 976 [1984]).

Accordingly, petitioners' claim that a permissive referendum was required by Town Law § 64 (2) is without merit. As they make no claim that the procedural requirements of General Municipal Law § 120-w were violated, or that annulment of the resolution and the agreement is otherwise justified, the petition was properly dismissed. We need not determine whether any conflict exists between Town Law § 64 (2) and General Municipal Law § 120-w, nor address the parties' remaining contentions.

Peters, P.J., Lahtinen and McCarthy, JJ., concur. Ordered that the judgment is affirmed, without costs.

