■ ROBERT J. BUTTLES, SR., Appellant-Respondent, v JAMES J. NATALE, SR., Respondent-Appellant, and ANTHONY L. NATALE et al., Respondents. [641 NYS2d 191] —Mercure, J. Cross appeals from a judgment of the Supreme Court (Viscardi, J.), entered December 15, 1994 in Saratoga County, upon a verdict rendered in favor of plaintiff against defendant James J. Natale, Sr.

In 1984, defendant James J. Natale, Sr. (hereinafter defendant) was desirous of acquiring an automobile dealership in the Village of Whitehall, Washington County, and obtaining a Chevrolet franchise. In order to satisfy General Motors' requirements that the franchise have original working capital of $102,000 and be managed by a "seasoned operator" making an initial contribution of at least 15% of the working capital and acquiring a minimum of 51% of the stock over a five-year period, in June 1985 defendant (as "Investor") and plaintiff (as "Dealer Operator") entered into an agreement (hereinafter the agreement) providing, as pertinent to this appeal, that (1) plaintiff would file a certificate of incorporation of Buttles Motors, Inc. (hereinafter the corporation) and designate plaintiff

and defendant as the original directors, (2) the corporation would issue a total of 100 shares of stock at a price of $1,020 per share, issuing 15 shares to plaintiff and 85 shares to defendant, (3) at the original meeting of the directors, defendant would be elected president and treasurer and plaintiff would be elected vice-president of the corporation, and (4) plaintiff would acquire 36 shares of defendant's stock over a period of five years by purchasing seven shares at the conclusion of the first through fourth years and eight shares at the conclusion of the fifth year, in each case at the issue price of $1,020 per share. The corporation was formed, the directors designated, the officers elected and the initial shares issued in accordance with the agreement.

In August 1985, General Motors and plaintiff entered into a dealer sales and service agreement and plaintiff was established as an authorized dealer for Chevrolet vehicles. Unfortunately, the dealership soon ran into financial difficulties, requiring the corporation to borrow $85,000 by January 1986, and the franchise was "out of trust" (unable to pay General Motors for cars as sold) shortly thereafter. In October 1986, defendant provided independent financing to rectify the franchise's obligations to General Motors and on November 21, 1986, defendant (as majority shareholder of the corporation) discharged plaintiff as "Dealer Operator". In June 1987, defendant, as president of the corporation, arranged for the sale of all of the assets of the corporation to another corporation controlled by defendant.

Plaintiff thereafter commenced this action alleging causes of action for (1) breach of fiduciary duty to plaintiff, as a minority shareholder of the corporation, by wasting corporation assets, (2) breach of the agreement, (3) intentional interference with contracts and fraud, and (4) violation of Debtor and Creditor Law article 10. Ultimately, the matter came on for trial. At the conclusion of plaintiff's case, defendant moved to dismiss the complaint based upon plaintiff's failure to establish a prima facie case. After some discussion among counsel and Supreme Court, the parties entered into a stipulation on the record in effect providing that (1) plaintiff would withdraw all four of his causes of action against defendant, (2) the complaint be amended to allege only plaintiff's entitlement to, first, 15% of the value of the stock of the corporation as of November 1986 and, second, the value of the remaining 36% that plaintiff had been authorized to purchase under the terms of the agreement, (3) plaintiff be granted judgment for 15% of the value of the corporation, as determined by the jury, and (4) a verdict be

directed in favor of defendant dismissing the claim for the value of the remaining 36% but that plaintiff be authorized to raise the propriety of that determination on appeal. The jury valued the corporation at $324,000 and Supreme Court awarded plaintiff judgment for 15% thereof, or $48,600, less an offset of $22,858, which Supreme Court determined plaintiff had borrowed from the corporation. Supreme Court further dismissed defendant's counterclaims and denied his posttrial motion to set aside the verdict. Plaintiff appeals and defendant cross-appeals.

Initially, we note that, inasmuch as defendant now seeks only an affirmance of Supreme Court's judgment, his cross appeal shall be deemed abandoned. As such, there is no present challenge to the jury's verdict valuing the corporation at $324,000 or Supreme Court's judgment awarding plaintiff 15% thereof. Further, of the various contentions advanced by plaintiff, only three survived his in-court stipulation withdrawing the causes of action originally pleaded in the complaint (*see,* CPLR 2104; *Deitsch Textiles v New York Prop. Ins. Underwriting Assn.,* 62 NY2d 999, 1002; *Nouri v Reich,* 198 AD2d 116).

First, we reject the contention that Supreme Court erred in dismissing plaintiff's claim for the value of the shares of stock he had been required to (but did not) purchase under the agreement. The trial evidence established that as of August 1986, plaintiff was required to make the first purchase of seven shares of stock, that he made no tender of the purchase price and that, in fact, he had no funds with which to make the purchase. Subsequent to that time and prior to the date for purchase of the next seven shares, the shareholders voted to terminate plaintiff's status as "Dealer Operator". Inasmuch as the express purpose for the agreement's five-year buy out of defendant's stock was to satisfy General Motors' requirements and thereby preserve plaintiff's entitlement to serve as "Dealer Operator", the cessation of that role effectively eliminated the provision. Concluding this point, it is our view that plaintiff had no vested right under the agreement or otherwise to continue as "Dealer Operator". To the contrary, he served as the corporation's at-will employee, a role distinct from that of a minority shareholder (*see, Ingle v Glamore Motor Sales,* 73 NY2d 183, 188), permitting his termination at any time for any reason (*see, Gallagher v Lambert,* 74 NY2d 562).

Second, we reject the contention that Supreme Court erred in denying plaintiff interest to the date of verdict. We do not view the jury's award as one for "a breach of performance of a

contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property" (CPLR 5001 [a]).

Finally, we agree with plaintiff that Supreme Court erred in awarding defendant an offset of $22,858. Although it was uncontroverted that plaintiff borrowed that sum from the corporation, the undisputed evidence was that plaintiff had repaid all but $5,200 thereof. Defendant does not argue otherwise.

Cardona, P. J., Casey, Yesawich Jr. and Spain, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by decreasing defendant's offset against plaintiff's recovery from $22,858 to $5,200, and, as so modified, affirmed.